UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

KALEB GILVIN,

Plaintiff,

v.

VENETO TUSCAN LLC; KARSAZ LAW; DOES 1-10,

Defendants.

Case No. 2:26-cv-00370-APG-EJY

**ORDER**
**and**
**REPORT AND RECOMMENDATION**

Pending before the Court are Plaintiff's First Amended Complaint ("FAC") and Expedited Motion for Leave to Supplement the Pleadings Pursuant to Federal Rule of Civil Procedure 15(d).[1] ECF Nos. 26, 57. Plaintiff's Application to Proceed *in forma pauperis* was granted on February 13, 2026. ECF No. 5. The Court finds as follows.

## I. Screening Standard

When reviewing a complaint filed by a *pro se* plaintiff, the Court must identify any cognizable claims and dismiss claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). The standard for dismissing a complaint for failure to state a claim is established by Federal Rule of Civil Procedure 12(b)(6). When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend with directions to cure its deficiencies unless it is clear from the face of the complaint that the deficiencies cannot be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995). In making this determination, the Court treats all allegations of material fact stated in the complaint as true, and the court construes them in the light most favorable to the plaintiff. *Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[1] The Court has considered all factual allegations raised by Plaintiff, though it only discusses those applicable to Plaintiff's claims in this Order and Report and Recommendation. *See Robertson v. Kitsap Cnty.*, Case No. 3:15-cv-05422-RBL-DWC, 2015 WL 8488800, at *7 n.1 (W.D. Wash. Oct. 27, 2015), *report and recommendation adopted,* Case No. 3:15-cv-05422-RBL-DWC, 2015 WL 8280044 (W.D. Wash. Dec. 8, 2015).

That is, *pro se* pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Allegations of a *pro se* complainant are held to less stringent standards than pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must plead more than mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.* In addition, a reviewing court should "begin by identifying … [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint may be dismissed *sua sponte* if the plaintiff's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (*e.g.*, claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.*, fantastic or delusional scenarios). *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II. Background

The Court screened Plaintiff's initial Complaint on February 13, 2026 and allowed Plaintiff's Fair Housing Act ("FHA") Retaliation claim to proceed against Defendant Veneto Tuscan LLC ("Veneto Tuscan").[2] ECF No. 5 at 3. The Court dismissed Plaintiff's Civil Conspiracy and Intentional Infliction of Emotional Distress ("IIED") claims arising under Nevada law with leave to amend. *Id.* at 4-5. The Court also dismissed claims to the extent Plaintiff sought to include Karsaz Law as a defendant because Plaintiff failed to allege facts connecting this defendant to any

[2] The Court believes Plaintiff's allegations concern Tuscan Highlands apartment complex where he was a resident. The complex is owned and operated by Defendant Veneto Tuscan.

wrongdoing alleged in his Complaint. *Id.* at 6. The Court recommended Plaintiff's claims arising under the Americans with Disabilities Act ("ADA") be dismissed with prejudice because Plaintiff's allegations related to his apartment complex, which is not considered a place of "public accommodation." *See id.* at 3-4. Plaintiff's ADA claim, which was initially dismissed, is reevaluated here as Plaintiff pleads this claim against the Tuscan Cove Bar (sometimes the "Bar"), an entity operating on the property of the Tuscan Highland apartment complex, to which Veneto Tuscan renters had access as an amenity. ECF No. 57 at 4. The Bar is operated by Element Management. ECF No. 26 at 11.

On March 3, 2026, Plaintiff initiated a separate lawsuit against the United States Postal Service ("USPS"). *Gilvin v. United States Postal Service*, Case No. 2:26-cv-00593 (the "Postal Service Case"), ECF No. 1, 1-1. On March 26, the Court consolidated the Postal Service Case and this matter into one proceeding. *Id.,* ECF No. 5.

## III. Plaintiff's Allegations

### a. <u>The "Mail Tampering" Incident</u>.

Plaintiff alleges that on January 9, 2026, a USPS mail carrier attempted to deliver certified mail to him sent by his former employer. ECF No. 26 at 8-9. According to Plaintiff, the mail, which he never opened, was a cease and desist letter concerning proceedings before the National Labor Relations Board ("NLRB"). *Id.* No one was available to receive the mail resulting in the mail carrier leaving a delivery notification "pink slip" stating Plaintiff could retrieve his mail at the Silverado post office. *Id.* at 9. Upon receipt of the pink slip, Plaintiff wrote "GFYS – RTS" on the front and returned it to the USPS. *Id.* at 9. Plaintiff maintains he never opened the certified letter and, after it was returned to the post office, the letter was eventually returned to the sender. *Id.*

Separately, Plaintiff says that on January 12, 2026, the mail carrier showed the pink slip marked "GFYS – RTS" to Cynthia Wireman, the Veneto Tuscan's "Community Manager."[3] *Id.* at 3. Plaintiff contends the carrier told Wireman that Plaintiff was involved in a legal proceeding. *Id.* at 9. Plaintiff does not allege facts that support this conclusion. Instead, Plaintiff contends Wireman

---

[3] Veneto Tuscan employs Latitude Property Management to manage the Tuscan Highlands apartment complex where Plaintiff was a resident. Wireman was an employee of Latitude Property Management.

kept the pink slip and called Plaintiff after the mail carrier left threatening "to report Plaintiff to the postal service—for writing ["GFYS – RTS"] on his own delivery notification." *Id.*

Based on the foregoing Plaintiff filed complaints with the USPS Office of Inspector General and the United States Postal Inspection Service. *Id.* at 10. Plaintiff also sent an email to Veneto Tuscan advising of the incident and Plaintiff's rights under federal law. *Id.* On March 3, 2026, Plaintiff filed his Complaint alleging the USPS carrier's conduct was a violation of the Privacy Act of 1974. Postal Service Case, ECF No. 1, 1-1 at 6.

b. <u>Access to the Tuscan Cove Bar</u>.

On the evening of January 12, 2026—the same day Ms. Wireman saw the pink slip—two bartenders at the Tuscan Cove Bar, Nicole DeLong and "Faith," allegedly approached Plaintiff in a hallway near his apartment and told him that dogs were not allowed at the Bar. ECF No. 26 at 10. When Plaintiff protested, the women informed him that because another local bar allowed dogs, the Tuscan Cove Bar had a no-dog policy. *Id.* Following this conversation, Plaintiff sent an email to Latitude Property Management asserting his right to have a service dog in the Bar. *Id.* at 11. Plaintiff also sent a "detailed accommodation request" to Steve Kennedy at Element Management. *Id.* Plaintiff claims he received no response to either email.

c. <u>The "Drink Tampering" Incident</u>.

Plaintiff say that on January 23, 2026, while visiting the Tuscan Cove Bar, he was served a drink by Ms. DeLong and that an "unidentified" person subsequently threw candy into his drink. *Id.* Plaintiff places significance of the fact that Ms. DeLong did not "ring up any of Plaintiff's drinks in the Bar's point of sale system;" however his bank records allegedly show that he purchased a drink at the Tuscan Cove Bar that night. *Id.*

On January 24, 2026, Plaintiff alleges he received texts from Ms. DeLong and Faith asking what had happened the night before. *Id.* On January 28, 2026, Plaintiff sent a written request to Latitude Property Management seeking preservation of the Bar's surveillance footage for January 23, 2026, from 7:30 to 8:45 p.m, claiming this time period could have captured the "drink tampering"

event. *Id*. at 13. Plaintiff states he did not receive a response to his request or to the follow-up email he sent the next day.[4] *Id*.

Liberally construed, it appears Plaintiff also sent a request to Mr. Kennedy at Element Management requesting preservation of the surveillance video, but he received no response. *Id*. Plaintiff says he saw Faith on January 28, 2026 and asked about the surveillance footage; however, Faith responded she did not "know about the cameras." *Id*. at 13. On January 29, 2026, Ms. DeLong sent Plaintiff a text stating "I just got off the phone with [Mr. Kennedy] and it sounds like you think I poisoned you." *Id*. at 22.

On January 31, 2026, Will Despart, presumably one of Plaintiff's neighbors, sent Plaintiff a text "confessing to and apologizing for the drink tampering." *Id*. at 14. Mr. Despart's text stated: "A piece of banana candy got thrown into the drink that was yours because THE GIRLS thought the drink was one of mine." *Id*. The text further says that "the authorities are also aware about the drink situation because it was reported as are my employers." *Id*. While there is no specific identification of who comprises "THE GIRLS" or to which "authorities" the incident was reported, Plaintiff discusses both in FAC and Motion to Supplement.[5]

A few hours later after Mr. Despart's text, Plaintiff says he received a text from Mr. Kennedy stating "I'm not on property your scaring people that live there with whatever your posting on line [sic.] they called the cops." *Id*. Soon after this text, Plaintiff says LVMPD conducted a "welfare check." *Id*. Plaintiff contends "THE GIRLS" called LVMPD to conduct the welfare check because Mr. Despart told them that he communicated with Plaintiff and they "panicked." *Id*. at 15. Plaintiff

---

[4] Plaintiff places significance on the fact that Veneto Tuscan apparently saved surveillance video from a dog fight that happened on January 11, 2026. ECF No. 26 at 13. Plaintiff alleges that Veneto Tuscan's decision to preserve the dog fight video, but failure to respond to his surveillance requests demonstrates "retaliatory intent." *Id*. Plaintiff does not state where the dog fight occurred, whether the same cameras that captured the dog fight would have also captured the "drink tampering" that occurred at the Tuscan Cove, or why the footage of the dog fight was preserved.

[5] In paragraph 64 of Plaintiff's FAC he alleges "the girls" are Ms. DeLong and Faith who are Tuscan Cove Bar employees. Plaintiff identifies Rachel Fillman as part of the "girl" group because she was photographed at the bar on the night in question. Plaintiff alleges that the other unidentified woman photographed with Ms. Fillman is believed to be the person who threw the candy in his drink. *Id*. In Plaintiff's Motion to Supplement, he identifies Madi Gaynor as another girls in attendance at the bar. ECF No. 57 at 6. Plaintiff also mentions Kyle Treadwell as a Tuscan Cove bar patron on the night of the alleged "drink tampering," but it is unclear if Plaintiff is alleging that he is part of "the girls" or had any involvement with the events described in the Complaint other than being at the bar and once being photographed with Ms. Fillman, Mr. Despart, and Ms. Gaynor. ECF No. 57 at 6. In any event, the Court rejects Plaintiff's allegations that these individuals were part of some broader conspiracy based on the fact that they were patrons at the Bar and were identified through social media because these facts do not state a civil conspiracy claim.

says one day later, February 1, 2026, Mr. Kennedy called him to say that he did not know what happened at the Bar, but Plaintiff says this was a lie because Ms. DeLong's January 29, 2026 text to Plaintiff stated that she spoke with Mr. Kennedy about the incident. *Id*. at 22.

d. <u>Eviction Related Events</u>.

On February 3, 2026, Plaintiff received a "Cease & Desist letter" from Karsaz Law, counsel for Veneto Tuscan, that revoked Plaintiff's amenity privileges, banned him from visiting the leasing office, and threatened further litigation. *Id*. at 15-16. One week later, on February 10, 2026, "Defendants" served Plaintiff with a "Three-Day Notice to Quit." *Id*. Plaintiff submits the notice was procedurally defective because the service form was blank. *Id*. at 17. Plaintiff says the Notice accused Plaintiff of "harassing and threatening several neighboring tenants and management's staff through the use of social media and harassing text messages." *Id*. (cleaned up). Plaintiff says he received an electronic notification from USPS that he was being mailed the same Notice, but the notice was not received—something he attributes to the prior, unidentified, USPS carrier's animus against him arising from the "mail tampering" allegations. *Id*. at 18.

Also on February 10, 2026, Ms. DeLong is alleged to have repeatedly called Plaintiff and sent him several "taunting" texts referencing his service dog. *Id*. at 16-17. One of those texts said: "You don't intimidate me you don't intimidate any of us" which Plaintiff says "confirms" the existence of a "group acting in concert against [him]." *Id.*

Plaintiff notes that no eviction action was filed against him. *Id*. at 18. Overall, Plaintiff says the ordeal has caused him great physical and mental harm including an episode of syncope which led to a significant bruising to his lower left rib cage, panic attacks, insomnia, severe sleep disruption, [and] "prolonged episodes of crying." *Id*. at 19-20.

e. <u>Ellerbe Lawsuit</u>.

Plaintiff references Sydney Ellerbe, another former tenant of the apartment complex, who sued Tuscan Highlands apartments in 2024 alleging race discrimination arising out of incidents at the restaurant that predated the Tuscan Cove Bar. *Id*. at 24. Mr. Ellerbe's case was dismissed after he failed to oppose a motion to dismiss. *Id*. In Plaintiff's Motion to Supplement he contends he undertook "exhaustive efforts to locate" Mr. Ellerbe, suggesting that the man disappeared. ECF No.

57 at 7. Plaintiff explains that Mr. Ellerbe's lawsuit alleged another tenant known as "Josh" fabricated a complaint against him, which served as the "pretext" to evict Ellerbe. *Id*. at 4. Plaintiff says that Mr. Ellerbe's Complaint noted that Josh committed suicide inside his apartment, which "establishes that Defendants knew the human cost of weaponizing vulnerable tenants against other tenants." *Id*.

f. Post TRO Conduct.

Plaintiff adds in his Motion to Supplement that the day after the TRO went into effect, Plaintiff overheard Wireman say to an unidentified maintenance employee "Oh god, I hope he goes away soon, it's crazy right, what's going on right?" ECF No. 57 at 5. Plaintiff suggests this statement demonstrates retaliatory animus on the part of "Defendants." *Id*.

## IV. Discussion

a. Claims Against USPS.

*1. The Privacy Act of 1974*

Plaintiff attempts to state a claim under the Privacy Act of 1974 against USPS based on the disclosure of a certified mail pink slip to Wireman. Postal Service Case, ECF No. 1-1 at 6. "The Privacy Act governs the disclosure of, access to, and amendment of records on individuals that are maintained by federal agencies." *Lane v. DOI*, 523 F.3d 1128, 1138 (9th Cir. 2008) (citing 5 U.S.C. § 552a). Under the Act, "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b). To state a claim under this statute, Plaintiff must show "(1) the agency disclosed information contained within a system of records, (2) the disclosure was improper, (3) the disclosure was intentional or willful, and (4) the plaintiff was adversely affected by the disclosure." *Tungjunyatham v. Johanns*, 500 Fed.Appx. 686, 689 (9th Cir. 2012) (citing *Swenson v. U.S. Postal Service*, 890 F.2d 1075, 1077 (9th Cir. 1989). A record is defined by the statute to include information such as an individual's "education, financial transactions, medical history, and criminal or employment history." 5 USC § 552a(a)(4). "A record is 'about an individual' when it 'reflect[s] some quality or characteristic about him.'" *Pick v. United States Dep't of Just.*, Case No. 24-4571,

2025 WL 3485394, at *1 (9th Cir. Dec. 4, 2025) (quoting *Unt v. Aerospace Corp*., 765 F.2d 1440, 1449 (9th Cir. 1985)). Information, like a "name and address, is insufficient to transform [something] into a record about him." *Id*.

The Court finds that Plaintiff does not allege plausible facts demonstrating a violation of the Privacy Act. Plaintiff says only that a mail carrier disclosed the notations Plaintiff wrote on a pink slip to his apartment complex management. The pink slip, known as a PS 3849 form, is a form used by USPS when a piece of mail is undeliverable. USPS, PS Form 3849 Redelivery Notice, https://faq.usps.com/articles/FAQ/PS-Form-3849-Redelivery-Notice (last visited September 10, 2026). The slip provides the date, the sender, the recipient, "the type of mailpiece that was attempted by the Carrier, why the mailpiece was not left, and which delivery options are available." *Id*. It is this information, together with Plaintiff's notation "GFYS – RTS," that was allegedly disclosed to Wireman.

The totality of the information disclosed does not fall within the definition of a "record" under the statute. As explained by the Ninth Circuit in *Pick*, a record must "reflect some quality or characteristic about" the recipient. 2025 WL 3485394, at *1. In addition, though not directly on point, the Ninth Circuit has explained that in the context of the Fourth Amendment privacy standard, "[t]here is no expectation of privacy in the addresses on a package, regardless of its class." *United States v. Hinton*, 222 F.3d 664 (9th Cir. 2000) (collecting cases). Further, the court in *Hinton* offered that the expectation of privacy is obviated because "[s]enders knowingly exposed the outsides of the mail to postal employees and others, and defendant could not keep those areas private." *Id*. (quoting *United States v. Choate*, 576 F.2d 165, 177 (9th Cir. 1978) (en banc).

Here, obviously the "sender' knowingly exposed itself and the type of mail to postal employees and others, and also exposed Plaintiff's name and address to the postal employees and others. Outside of Plaintiff's name and address, information that would not be protected under the Privacy Act, the only other thing the USPS carrier "exposed" was what Plaintiff chose to write on the front of the pink slip. However, the notation, "GFYS-RST," does not expose a record maintained by a federal agency and, therefore, cannot support a Privacy Act Claim. *See Unt*, 765 F.2d at 1449 (Explaining that a record "must reflect some quality or characteristic about [Plaintiff]"). Based on

the foregoing, the Court recommends Plaintiff's Privacy Act claim be dismissed with prejudice as the claim fails as a matter of law.

2. *The Federal Tort Claims Act*

"The Federal Tort Claims Act ("FTCA") provides that the United States may be held liable for personal injury ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Veasley v. United States*, 201 F.Supp.3d 1190, 1200 (S.D. Cal. 2016) (quoting 28 U.S.C. § 1346(b)(1) (quotation marks omitted)). "In order to bring a civil suit under the FTCA, a plaintiff must first file an administrative claim (i.e., a Form 95) and exhaust administrative remedies." *Kuklok v. United States Dep't of Veterans Affs.*, Case No. 19-CV-02958-DMR, 2020 WL 4051561, at *7 (N.D. Cal. July 20, 2020)[6] (citing 28 U.S.C. § 2675(a)).

Plaintiff includes his "Attachment to Standard 95 Form" with his FAC; however, the Court finds he does not state a claim under the FTCA. ECF No. 1-1 at 11. In sum, Plaintiff does not demonstrate he submitted an administrative claim to USPS. In the absence of submission of his administrative claim, he has not exhausted his administrative remedies that must come before he can bring his claim in Court. Administrative exhaustion is a mandatory jurisdictional requirement and it must be properly alleged in the Complaint. *E.g. Branson v. U.S. Forest Serv.*, Case No. 2:19-cv-01399-WBS-CKD P, 2021 WL 2913075, at *3 (E.D. Cal. July 12, 2021), *report and recommendation adopted,* Case No. 2:19-cv-01399-WBS-CKD, 2021 WL 3884171 (E.D. Cal. Aug. 31, 2021).

Nonetheless, because this failure is potentially curable, the Court dismisses Plaintiff's FTCA claim against the United States Postal Service without prejudice and with one additional opportunity to amend. If Plaintiff wishes to bring an FTCA claim to Court, he must plead and provide evidence that he exhausted his administrative remedies.

---

[6] *Aff'd sub nom. Kuklok v. U.S. Dep't of Veterans Affs.*, Case No. 21-15105, 2022 WL 256361 (9th Cir. Jan. 26, 2022).

b. Claims Against Veneto Tuscan and Tuscan Cove Bar.[7]

Plaintiff's FAC reflects his belief that Veneto Tuscan, the Tuscan Cove Bar, and various individuals, including former neighbors and employees of the Bar, worked in concert to violate Plaintiff's rights toward the goal of having him evicted. Some of Plaintiff's far reaching allegations border on delusional and fanciful. Setting these aside, however, the Court finds that at the screening stage, he is able to state ADA and FHA claims.

*1. Title III Discrimination Under the ADA.*

"To prevail on a Title III discrimination claim, the plaintiff must show that (1) []he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.* 481 F.3d 724, 730 (9th Cir. 2007). Plaintiff does not identify a disability in the FAC. However, Plaintiff does allege he uses a service dog to support his ability to operate in public by "facilitating brief social interactions to counter Plaintiff's antisocial symptoms." ECF No. 26 at 2. The Court liberally construes these facts as stating Plaintiff suffers from anxiety that substantially limits a major life activity. Plaintiff further alleges that Tuscan Cove is a restaurant open to the public and is therefore a place of public accommodation. Plaintiff meets the third element of a Title III ADA claim when he alleges the Tuscan Cove Bar prohibited his service dog from entering the establishment. *Id.* at 4-5,10, 30-31. By prohibiting his service dog, Plaintiff facially states that he was denied an accommodation because of his disability.

*2. Retaliation Under the ADA*

To establish a prima facie claim of retaliation, Plaintiff must plead facts demonstrating that: "(1) he engaged in a protected activity; (2) an adverse action was taken against him; and (3) a causal connection exists between the protected activity and the adverse action." *Smith v. Harrington*, Case

[7] Plaintiff realleges his FHA Retaliation claim against Veneto Tuscan, which the Court previously allowed to proceed. ECF No. 26 at 28-29. Plaintiff alleges he engaged in a protected activity by requesting a disability accommodation relating to his service dog and adverse actions were taken against him, including the revocation of amenities and threat of eviction. *Id.* The Court finds these facts to be sufficient to state an FHA retaliation claim against Veneto Tuscan. *McGhee v. Forest Ridge Apartments LLC*, Case No. CV-22-08155-PCT-SPL, 2022 WL 23037031, at *2 (D. Ariz. Sept. 8, 2022).

No. C 12-03533 LB, 2015 WL 1407292, at *22 (N.D. Cal. Mar. 27, 2015), *aff'd sub nom. Smith v. Liddell*, 682 Fed.Appx 630 (9th Cir. 2017) (citing *Pardi v. Kaiser Permanente Hosp. Inc.,* 389 F.3d 840, 849 (9th Cir. 2004)). In support of this claim Plaintiff alleges he engaged in a protected activity when he asked that his service dog be allowed to accompany him to the Tuscan Cove Bar, his request was denied, and he was subject to various adverse actions. ECF No. 26 at 34. Plaintiff offers a list of six events that are allegedly causally connected to his request for an accommodation. ECF No. 26 at 33-34. Even liberally construed, Plaintiff does not tie any of these acts to his protected activity; that is, the request to bring his service dog to the Bar. Rather, each of the events his alleges comes after the banana candy—intended for an apparent co-resident at Veneto Tuscan—was mistakenly dropped in his drink. *Id.* Based on the foregoing, the Court finds Plaintiff's allegations fail to establish the third element of an ADA retaliation claim. However, this failure may be curable. Thus, this claim is dismissed without prejudice and one more opportunity to amend.

*3. IIED*

To state an IIED claim in Nevada, a plaintiff must plead facts supporting "'(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation.'" *Posadas v. City of Reno*, 851 P.2d 438, 444 (Nev. 1993) (quoting *Star v. Rabello*, 625 P.2d 90, 91-92 (Nev. 1981)). Allegations sufficient to state a claim of extreme and outrageous conduct are those that describe "conduct that is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (1998) (internal quotation marks and citation omitted). "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Id.* (internal quotation marks and citation omitted).

Plaintiff alleges extreme and outrageous conduct by pointing to all the conduct alleged in the FAC. ECF No. 26 at 34-36. Thus, it is unclear who Plaintiff is seeking to hold accountable for alleged outrageous conduct. Rule 8 of the Federal Rules of Civil Procedure requires a complaint to plead sufficient facts to give a defendant fair notice of the claims against him and the grounds upon which it rests. *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir.

1997) (citations omitted). "[A] pleading may not simply allege a wrong has been committed and demand relief." *Sherrell v. Bank of Am., N.A.*, Case No. CV F 11-1785-LJO (JLT), 2011 WL 6749765, at *4 (E.D. Cal. Dec. 22, 2011).

Further, even taking Plaintiff's allegations as true—that a piece of candy was thrown into the drink after it was served—Plaintiff admits Mr. Despart explained the candy was meant for him, not Plaintiff. Plaintiff affirms that Mr. Despart's explanation was a "confession." ECF No. 26 at 14. These facts belie a finding of extreme and outrageous conduct, and instead reflect some misguided fun that inadvertently involved Plaintiff.

Plaintiff says that Wireman, the community manager, engaged in extreme and outrageous conduct by "threaten[ing] to report Plaintiff to the postal service for writing on his own delivery notification." ECF No. 26 at 35. Plaintiff also alleges Ms. DeLong sent him "threatening text messages" about his service dog. However, threats of the nature described do not rise to the level of extreme and outrageous conduct sufficient for IIED liability. *See Warren v. Tree*, No. 2:23-cv-01377-APG-EJY, 2024 WL 147787, at *2 (D. Nev. Jan. 11, 2024) (citing *Welder v. Univ. of S. Nev.*, 833 F.Supp.2d 1240, 1246 (D. Nev. 2011). Plaintiff also alleges that unidentified Defendants called LVMPD to conduct a welfare check. ECF No. 26 at 35. But courts have found that calling the police, even if based on false information, does not rise to the level of extreme and outrageous. *See Warren*, 2024 WL 147787, at *3. Lastly, Plaintiff alleges that Veneto Tuscan engaged in extreme and outrageous conduct by threatening litigation, terminating his amenity access, and threatening eviction. As explained in the Court's prior screening Order, eviction does not rise to the level of extreme and outrageous conduct. *Peshkepia-Cadena v. Suntrust Bank N.A.*, Case No. CV 12-07322 RGK (RZx), 2012 WL 12884411, at *2 (C.D. Cal. Dec. 17, 2012), *aff'd sub nom. Peshkepia-Cadena v. SunTrust Bank*, 644 Fed.Appx. 715 (9th Cir. 2016).

Based on the foregoing, the Court recommends Plaintiff's IIED claims be dismissed with prejudice. Plaintiff provides the Court with lengthy factual allegations regarding the conduct he is challenging. While the Court does not suggest the alleged conduct acceptable, well settled law establishes that unacceptable and even unkind conduct is insufficient to meet the "extreme and outrageous" standard required of an IIED claim. *See Buonanoma v. Sierra Pac. Power Co.,* Case

No. CV-N-04-0077-LRH (VPC), 2005 WL 8162690, at *10 (D. Nev. Sept. 21, 2005) (holding that a "mistake maybe inconsiderate and unkind, it is not remotely close to extreme and outrageous conduct.").

4. *Civil Conspiracy*

"To state a civil conspiracy claim in Nevada, plaintiff must allege, 'a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage.'" *New England Life Ins. Co. v. Lee*, Case No. 2:14-CV-1797-JCM-NJK, 2015 WL 1413391 (D. Nev. Mar. 27, 2015) (citing *Collins v. Union Fed. Sav. & Loan Ass'n,* 99 Nev. 284, 662 P.2d 610, 622 (Nev. 1983)). Plaintiff's allegations are insufficient to state this claim.

Plaintiff alleges employees and patrons of the Tuscan Cove Bar conspired with Veneto Tuscan to (1) violate the FHA and ADA, (2) evict Plaintiff, and (3) not preserve evidence. ECF No. 26 at 38-40. However, Plaintiff has not plausibly alleged facts demonstrating an agreement between the Defendants to accomplish these objectives. Plaintiff alleges that a group of unspecified "girls" acted to tamper with his drink. *Id*. at 14. Plaintiff grounds this allegation in a text he received from Mr. Despart explaining that "THE GIRLS" mistakenly threw a piece of candy in Plaintiff's drink because they believed it to be Mr. Despart's drink. *Id*. at 14. Given Mr. Despart's statement, which Plaintiff calls a "confession," the facts simply do not demonstrate a conspiracy to violate Plaintiff's rights.

Plaintiff also alleges that Ms. DeLong and Faith, another Bar employee, reached out to Plaintiff over text and "feign[ed] ignorance" over the "drink tampering." *Id*. at 38. And Plaintiff highlights that Ms. DeLong allegedly called the police to conduct a welfare check on him. *Id*. These events, even if accepted as true, do not plausibly demonstrate an effort to violate an unlawful objective.

Finally, Plaintiff contends unidentified residents of his apartment complex filed complaints against him that Veneto Tuscan "ratified" by serving the eviction notice and failing to preserve surveillance footage. What is unclear, however, is who filed the supposed complaints and, therefore, what evidence there is that these unidentified individuals engaged in concerted action intending to

accomplish an unlawful objective for the purpose of harming Plaintiff. *Consol. Generator-Nev., Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998). Indeed, Plaintiff pleads no facts demonstrating an explicit or tacit agreement between two or more identified or unidentified alleged conspirators to harm him. *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 112 (Nev. 1998), *overruled in part on other grounds by GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001).

The Court recommends Plaintiff's civil conspiracy claim be dismissed with prejudice because any further amendment would be futile. Plaintiff has twice attempted to state this claim and on each occasion has failed to plead facts demonstrating the necessary agreement to harm him—the gravamen of civil conspiracy. This is not to say an eviction would not be harmful. Rather, it is to say that the facts alleged do not plausibly demonstrate there was an agreement between two or more conspiratory to accomplish something unlawful.

c. <u>FHA Retaliation By Karsaz Law</u>.

"Section 3617 of the FHA simply declares that it is 'unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of. . . any right granted or protected by' certain sections of the FHA, including Section 3604, without specifying who may be held responsible for those practices." *Mendy v. Larson*, Case No. 2:22-CV-01426-LK, 2025 WL 2509024, at *5 (W.D. Wash. Sept. 2, 2025) (quoting 42 U.S.C. § 3617). At least one court in the Ninth Circuit has interpreted the FHA to apply, even where the defendants "merely contracted with the property management company" and had "no control over affecting access to housing." *Id.* (*citing NAACP v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 298 (7th Cir. 1992) (observing that Congress wrote Section 3604 "in the passive voice—banning an outcome while not saying who the actor is, or how such actors bring about the forbidden consequence"); *Conn. Fair Hous. Ctr. v. Corelogic Rental Prop. Sols., LLC*, 369 F.Supp.3d 362, 370 (D. Conn. 2019) (same); *United States v. City of Hayward*, 36 F.3d 832, 835 (9th Cir. 1994) ("[T]he language 'interfere with' [in Section 3617] has been broadly applied to reach all practices which have the effect of interfering with the exercise of rights under the federal fair housing laws.") (citation modified); *see also Meyer v. Holley*, 537 U.S. 280, 285 (2003) (noting that the FHA "focuses on prohibited acts" and "says nothing about

[defendants'] vicarious liability")). Moreover, the definition of a person, under the FHA, includes "legal representatives." 42 U.S.C. 3602(d).

The Court finds, for the purpose of screening, Plaintiff has alleged enough facts to state a claim against Karsaz Law. Plaintiff alleges that he engaged in a protected activity by requesting an accommodation related to his service dog. ECF No. 26 at 28. Plaintiff alleges that Karsaz Law, as counsel, drafted communications that revoked his amenity privileges, banned him from the leasing office and threatened him with future litigation. *Id*. at 40-41. The Court finds these allegations to be sufficient for purpose of stating the claim against Karsaz Law.

**V. Order**

IT IS HEREBY ORDERED that Plaintiff's Expedited Motion for Leave to Supplement the Pleadings Pursuant to Federal Rule of Civil Procedure 15(d) (ECF No. 57) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's FTCA claim against the United States is dismissed without prejudice and with one additional opportunity to amend.

IT IS FURTHER ORDERED that Plaintiff's ADA retaliation claim against Tuscan Cove Bar is dismissed without prejudice and with one additional opportunity to amend.

IT IS FURTHER ORDERED that if Plaintiff chooses to file an amended complaint that complaint must be titled "Second Amended Complaint." The amended complaint must be filed no later than **October 1, 2026** and must contain all claims and all facts in support of the claims Plaintiff seeks to assert. The amended complaint must also identify each defendant he seeks to sue and asserts facts that tie that defendant to wrongdoing. If Plaintiff files a second amended complaint and fails to include the facts necessary to support a claim raised, he will not be granted leave to proceed with those claims.

IT IS FURTHER ORDERED Plaintiff's FHA Retaliation claim will continue to proceed against Veneto Tuscan.

IT IS FURTHER ORDERED Plaintiff's Title III ADA claim may proceed against the Tuscan Cove Bar.

IT IS FURTHER ORDERED Plaintiff's FHA Retaliation claim may proceed against Karsaz Law.

IT IS FURTHER ORDERED that the Clerk of Court **must** send Plaintiff two USM-285 forms to Plaintiff who **must** return the forms no later than **September 24, 2026** to:

Marshal Schofield
U.S. Marshal, District of Nevada
Lloyd D. George Federal Courthouse
333 Las Vegas Blvd. S., Suite 2058
Las Vegas, Nevada 89101

Plaintiff is advised to review the Nevada Secretary of State Business Entity Search website for Tuscan Cove Bar and Karsaz Law's registered agents, the individuals to be served with Plaintiff's First Amended Complaint.

IT IS FURTHER ORDERED that the Clerk of Court must issue a summonses for the Tuscan Cove and Karsaz Law and deliver the same, together with two copies of Plaintiff's First Amended Complaint (ECF No. 26) and of this Order to the U.S. Marshal Service for service on Defendants.

IT IS FURTHER ORDERED that the U.S. Marshal Service must attempt service on each Defendant no later than twenty-one (21) days after it receives the USM-285 from Plaintiff. Service on each Defendant must include the applicable summons and one copy of the First Amended Complaint and this Order.

## VI. Recommendation

IT IS HEREBY RECOMMENDED Plaintiff's Privacy Act claim against the United States Postal Service be DISMISSED with prejudice.

IT IS FURTHER RECOMMENDED Plaintiff's IIED and Civil Conspiracy claims against all named Defendants be DISMISSED with prejudice.

Dated this 10th day of September, 2026.

ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Under Local Rule IB 3-2, any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court holds

the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). The Ninth Circuit also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).